## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK SILVESTER; KENDRA SILVESTER; Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> -against- <br><br> SELENE FINANCE, LP, <br><br> Defendant. | Civil Action No. <br><br> JURY TRIAL DEMANDED <br><br> **CLASS ACTION COMPLAINT** |

Plaintiffs, Mark Silvester and Kendra Silvester ("Named Plaintiffs"), individually and on behalf of all other persons similarly situated by their attorneys, make the following allegations as follows:

### NATURE OF THE CASE

1.      This is a class action complaint brought by Named Plaintiffs, individually, and on behalf of all other persons similarly situated, against Selene Finance LP ("Selene" or "Defendant") under federal and state law including the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and New York consumer protection laws, including New York General Business Law § 349 *et. seq.* seeking redress for the Defendant's illegal and fraudulent practices aimed at maximizing automated fees assessed on borrowers' accounts who had fallen into arrears on their mortgages including injunctive relief and damages. Defendant formed an enterprise to establish a standardized practice of assessing multiple and repetitive fees for unnecessary or fictitious property inspections against borrowers' accounts without any consideration of the terms of the

borrowers' notes or specific circumstances of the borrowers and then knowingly misrepresented these fees to the borrowers.

2.      The Defendant as a mortgage servicer profits from fees assessed against the mortgage accounts it services. Servicers, like the Defendant, can make tremendous profits from a loan in default where they assess repetitive, unnecessary, fictitious and substantial fees. The Defendant's incentive, therefore, is to assess as many charges as possible, whether lawful or not, and to collect all outstanding fees and costs prior to applying borrowers' payments to interest and principal.

3.      The automated computer systems utilized by the Defendant, such as Selene Asset Resolution Application (SARA), a proprietary application used for default activities, are designed and programmed to systematically charge excessive fees including unnecessary property inspections and inspections that were not even carried out. The Defendant then collects fees on each inspection so ordered.

4.      These unnecessary inspection fees allow the the Defendant to collect additional late fees and default related fees based upon the borrowers' increased monthly costs. This practice results in an increased financial burden on already defaulted borrowers. As aptly stated  by Senator Charles E. Schumer in his opening statement at a Senate Judiciary Subcommittee on Administrative Oversight and the Courts meeting, mortgage servicing companies have caused borrowers who have already fallen into arrears on their mortgage to suffer a "death by a thousand fees." 110 Cong. (2008).

5.      While borrowers are suffering from this fraudulent and deceptive scheme, the assessment of the inspection fees on home mortgage loans generates immense revenues for Defendant.

- 2 -

6.     This action was brought by Plaintiffs to stop Defendant's scheme and to recover the improper, unnecessary, fictitious and unreasonable fees charged to and paid by Plaintiffs and putative Class members.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 11 U.S.C. § 1332(d)(2) as various members of the Class are citizens of a state different from Defendants' state and the aggregate amount in controversy, exclusive  of interest and costs, exceeds the sum or value of five million dollars.

8.     Further, this Court has jurisdiction over this matter under 18 U.S.C. §§ 1961, 1962 and 1964, 28 U.S.C. §§ 1331, 1332 and 1367.

9.     This Court has personal jurisdiction over the Defendant pursuant to 18 U.S.C. §§ 1965(b) and (d). In addition, this Court may exercise supplemental jurisdiction over the state law claims because and the state and federal claims derive from a common nucleus of operative facts so that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

10.     Diversity jurisdiction is also conferred over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, § 7, 119 Stat. 13 ("CAFA"). Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated. 28 U.S.C. § 1332(d)(6).

11.     Venue is proper in this district pursuant to 18 U.S.C. § 1965(a), 28 U.S.C. § 1391, and 15 U.S.C. § 22 because the Defendant's contacts are sufficient to subject them to personal jurisdiction in this District. Further, the Defendant is found, does business or transacts business within this District.

## THE PARTIES

12.     Plaintiffs Mark Silvester and Kendra Silvester are individuals and citizens of the state of New York. They are a married couple who presently reside in Katonah, New York and during the Class Period, Mr. and Mrs. Silvester purchased a home and obtained a mortgage that was ultimately serviced by Defendant.

13.     Over the life of the loan, the Silvesters occasionally faced financial difficulty that caused them to not make timely payments on their mortgage.

14.     When the Silvesters did not make timely mortgage payments, the monthly statement received from Selene through the U.S. mail reflected additional amounts owed for late fees and inspections of their property which were intentionally hidden or not masked by the Defendant.

15.     For example, the Silvesters were assessed numerous unlawful inspection fees cryptically delineated as "Misc FC,BK Expenses" in the individual amount of $12.00 despite the fact they were working with the Defendant on a loan modification and the Defendant clearly knew that the property was occupied.

16.     An example of how unnecessary, unreasonable and extreme the inspection fees assessed were is the fact that the Silvesters were charged at least $180.00 in inspection fees, however, it was not evident on the mortgage statements that the fees being charged were even for property inspections as the inspections fees were misrepresented as "Misc FC,BK Expenses." This form of masking the true nature of the fees charged is the Defendant's way to trick or deceive the borrowers in order to unlawfully profit off the Plaintiffs' and Class members' misfortune. These fees were unlawfully assessed by Selene pursuant to the fraudulent scheme alleged herein.

17.    The Silvesters were residing in the subject home at the time, the Defendant knew the home was occupied and upon information and belief the Defendant did not even inspect the Property, but charged the random so called inspection fees and hid the fees true nature on the mortgage statements.

18.    These fees were unlawfully assessed by Selene pursuant to the fraudulent scheme alleged herein.

19.    Defendant Selene Finance LP is a Texas company with its principal office located at 9990 Richmond Avenue, Suite 400 South, Houston, Texas 77042 and is an indirect subsidiary of Selene Holding, LLC. Selene services residential mortgage loans in New York and throughout the United States, including loans within this district.

## FACTUAL ALLEGATIONS

20.    This action stems from an unjust scheme undertaken by the Defendant to maximize profit by ordering repetitive, unfair, fictitious and excessive property inspections which are then charged to defaulted borrowers' accounts. For each inspection ordered, the Defendant collects fees and then as a result of the unnecessary, unfair and repetitive inspection fees, the Defendant collects additional late fees and default related fees due to the borrowers' increased monthly costs.

21.    Rather than earn income from the interest on these loans, financial institutions like Defendant are paid a fee for their loan administration services.

22.    Defendant manages and administers its residential mortgage servicing tasks with an automated computer software program, such as Selene Asset Resolution Application (SARA), a proprietary application used for default activities. The policies and procedures for the software program are designed, *inter alia*, to manage borrowers' accounts and assess fees. For example, if a borrower is in default, the Defendant's loan servicing platform will automatically order a

property inspection without regard to actual need, warranted under the circumstances, or permitted by the mortgage contracts or applicable law.

23.     As the process is automatic, the Defendant does not have employees involved in the determination of whether a property inspection is reasonably necessary to protect its interests in the subject property.

24.     Further, these property inspections are automatically ordered on a cyclical basis until the borrower is no longer in default regardless of whether the property has been previously inspected, deemed occupied, well-maintained and in good condition. Rather than being based on reasonable parameters, the servicing platform is programmed to order inspections and impose as many charges and fees as possible. In most cases, as in the subject situations, the Defendant continues to engage in this conduct even after it is notified that the property is inhabited and in good condition.   The frequency of these inspections is excessive and neither reasonable nor appropriate.

25.     Further, the blatant and calculated misrepresentation of the inspection fees being charged on the mortgage statements as "Misc FC,BK Expenses" further shows the true deceit of the of the inspection fees.

26.     The elementary nature of the inspections themselves is further evidence that these computer-generated inspections are unreasonable, confer no discernible benefit on the lender, and serve no apparent purpose other than to generate revenue for Defendant. The property inspections ordered by the Defendant's computer system are mere "drive-by" inspections, where the inspector drives by the property ostensibly to assess whether the house is occupied, being maintained and has not been damaged. These inspections provide little, if any, real opportunity to determine

whether the lender's interest in the property is at risk. In fact it is suspect whether inspections actually take place.

27.    As the United States Bankruptcy Court for the Eastern District of Louisiana held in *In re Dorothy Chase Stewart*, No. 07-11113, 2008 WL 2676961 (Bkrtcy. E.D. La. July 9, 2008), a bank's unlawful, automated process of using computer software to trigger property inspections once a borrower is in default, and to continuously order those inspections thereafter until the default is cured, deepened the borrower's default. Further, the property inspections were neither necessary nor reasonable and were merely conducted to generate additional fees which increased the lender's bottom line and not to safeguard the lender's interest.

28.    The Defendant then knowingly misrepresented these unreasonable and excessive inspection fees to the Plaintiffs and the Class members by portraying them as legitimate charges labeled with a cryptic name even though the Defendants knew that the inspections were not necessary to maintain or protect the properties or, at times, the inspections did not even occur.

29.    The least sophisticated consumer would understand the property inspection fees as represented by the Defendant to mean that the fees were legitimate and authorized by their contract or law. Meanwhile, the Defendant knew that inspection fees were unreasonable, fictitious and excessive and not authorized by contract or law.

30.    Due to the high volume of loans Defendant services, tens of thousands of borrowers are believed to be victims of this scheme. As a result of the inspection scheme, the Defendant has obtained Plaintiffs' and the class' money and increased their debt obligations without justification and contrary to applicable law.

## CLASS ACTION ALLEGATIONS

31.    Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules

23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, as a class action on behalf of a nationwide class defined as all persons who were charged computer-generated inspection fees by Defendant as a result of a late payment on their mortgage.

32.     Excluded from the Class are Defendant, any entity in which a Defendant has a controlling interest or is a parent, or subsidiary of, or any entity that is controlled by Defendant, and Defendant's officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns.

33.     The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs do not know the exact size or identities of the proposed Class as such information is in the exclusive control of Defendant; however, Plaintiffs believe that the Class is comprised of thousands of individuals who are geographically dispersed throughout the United States.

34.     All members of the Class have been subject to and affected by the same practices and policies described herein. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions include, but are not limited to, the following:

      a.  Whether the Defendant had a policy and practice of frequently charging persons in arrears unlawful and unreasonable inspection fees to wit more than twelve inspection fees in one year period;

      b.  Whether Defendant and vendors aided and abetted each other in furtherance of the unlawful acts alleged herein;

      c.  Whether Defendant engaged in mail and wire fraud;

      d.  Whether Defendant engaged in a pattern of racketeering activity;

e.  Whether the Defendant is an enterprise within the meaning of 11 U.S.C. § 1961(4);

f.  Whether Defendant conducted or participated in the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c);

g.  Whether Defendant's overt and/or predicate acts in furtherance of the aiding and abetting and/or direct acts in violation of 18 U.S.C. §§ 1962(a) and (c) proximately caused injury to the Plaintiffs' and Class members' business or property;

h.  Whether Defendant's communications with the Plaintiffs and Class members violated provisions of the Fair Debt Collection Practices Act;

i.  Whether the Defendant was unjustly enriched by its deceptive practices;

j.  Whether the Defendant committed fraud by charging for inspections that were never performed;

k.  Whether Defendant's unlawful, unfair and deceptive practices harmed Plaintiffs and the Class;

l.  Whether the Court can enter an declaratory and injunctive relief; and

m.  The proper measure of damages.

35.  The claims of the named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that both the Plaintiffs and the other members of the Class are subject to the same wrongful policies and practices by the Defendant.

36.  The individually named Plaintiffs will fairly and adequately represent the interests of the Class and have no interests antagonistic to the Class members. Further, they are committed to the vigorous prosecution of the Class' claims and have retained a firm qualified to pursue this litigation.

37.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual class members may lack the financial resources to vigorously prosecute a lawsuit against the Defendant. As such, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and with the unnecessary duplication of efforts and expense that numerous individual actions engender. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant. Furthermore, the adjudication of this action presents no unusual management difficulties.

38.     The Defendant has acted or refused to act on grounds generally applicable the Class, making final declaratory or injunctive relief appropriate.

39.     Adequate notice to the proposed class can be achieved through the U.S. mail to the addresses of the Class members that are kept within Defendant's records. Notice can also be supplemented via publication.

## FIRST CAUSE OF ACTION

## Violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c))

40.     The Plaintiffs repeat, reiterate and allege each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

41.     In 18 U. S. C. §1964(c), RICO provides a private right of action to "[a]ny person injured in his business or property by reason of a violation," as pertinent here, of §1962(c).

42.     § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with [a qualifying] enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity or **collection of unlawful debt**." Emphasis added.

43.     Under RICO, "racketeering activity" is defined to include a wide variety of offenses enumerated as "predicate acts" in §1961 including, *inter alia,* mail and/or wire fraud.  §1961(1)(B).

44.     A person commits mail fraud whenever that person, having desired any scheme to defraud, uses the mail or any private or commercial carrier while executing that scheme. §1341. Any "mailing . . . incident to an essential part of the scheme . . . satisfies the mailing element," *Schmuck v. United States*, 489 U. S. 705, 712 (internal quotations omitted), even if the mailing "contain[s] no false information," *id.* at 715.

45.     A person commits wire fraud whenever that person, having devised any scheme to defraud, transmits or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing that scheme. § 1343.

46.     Defendant engaged in two or more acts of mail and/or wire fraud within the past ten years.

## THE ENTERPRISE

47.     At all relevant times, the Defendant was a "person" within the meaning of RICO, 18 U.S.C. § 1961(3).

48.     RICO broadly defines an enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  §1961(4).

49.     Upon information and belief, Defendant, including its directors, employees and agents, along with its property inspection vendors constitute an association-in-fact enterprise (the

"Selene Enterprise"), as that terms is defined in § 1961(4), that engages in, and the activities of which affect, interstate commerce.

50.     The members of the Selene Enterprise are and have been associated through time and are and have been joined in the common purpose of maximizing their profits by charging unnecessary and repeated default-related fees to Plaintiffs and Class members. Further the members of the Selene Enterprise function as a continuing unit as described within.

51.     The Defendant maintains an existence separate and distinct from the Selene Enterprise as well as participates in and are members and part of the Selene Enterprise.

52.     Defendant controls and operates the Selene Enterprise as it, *inter alia*, establish computer program guidelines that automatically order property inspections by vendors with respect to loans deemed in default without regard to whether such property inspections are necessary; send out vendors to inspect the property regardless of the necessity of said inspections; arrange the uploading of property inspection reports to the automated system; assess fees to borrowers for the unnecessary and repeated property inspections; send statements to the borrowers that are misleading as to the nature of the charged default-related fees; collect payments from said borrowers that include inspection fees; and pay vendors for each property inspection completed using funds received from borrowers.

53.     The Selene Enterprise's systematic linkage is shown through the contractual relationships, agreements, financial ties, and coordination of activities between Defendant and the property inspection vendors. The Defendant's automated computer system is a common communication network by which Defendant and the vendors share information. This common communication network allowed the Defendant to charge Plaintiffs and Class members unreasonable, excessive and improper fees and to gain from the resulting profits.

- 12 -

54.     The Selene Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendant engages. This separate structure is exemplified by the conflicting nature of a mortgage servicer assessing unnecessary inspection fees when it is obligated to act under servicing guidelines.

### PREDICATE ACTS

55.     Under RICO, "racketeering activity" is defined to include a wide variety of offenses enumerated as "predicate acts" in §1961 including, *inter alia*, mail (§ 1341) and/or wire fraud (§1343). §1961(1)(B).

56.     Defendant has violated and continue to violate each of these laws to effectuate their scheme of assessing and collecting unnecessary and fictitious inspection fees on accounts of borrowers deemed in default.

57.     Additionally, Defendant's conduct is unlawful under § 1341 and § 1343, as in furtherance of their scheme, the Defendant sought to and did aid and abet the others in violating the above laws.

58.     The Defendant used the mail in furtherance of their scheme to defraud borrowers whose loans are serviced by Defendant by obtaining money from borrowers using false and fraudulent pretenses.

59.     The Defendant utilized the United States mail, in violation of 18 U.S.C. § 1341, to send Plaintiffs and Class members mortgage statements, payoff demands, and other correspondence which showed charged fees for unnecessary property inspection fees. Despite knowing such property inspections were unnecessary, the Defendant fraudulently represented to the Plaintiffs and Class members that the fees were legitimate. The Defendant also used the mail to accept payments in furtherance of their scheme through the mail.

60.     Further, in violation of 11 U.S.C. §1343, the Defendant transmitted and received by wire, *inter alia*, monthly mortgage statements, agreements, correspondence, wire transfers and inspection reports and transmitted or caused to be transmitted  false statements over the telephone, facsimile, electronic mail and internet. These items included information or communications made which further or are necessary to effectuate the scheme. Under §§ 1341 and 1343, each of these acts constitute an act of wire or mail fraud.

61.     By issuing mortgage statements to Plaintiffs and Class members, Defendant represented to the Plaintiffs and Class members that all amounts due on these statements were lawful and reasonable charges. As such, the Defendant misrepresented to Plaintiffs and Class members in their monthly mortgage statements that all fees, charges and amounts due were lawful, proper and actually occurred.

62.     Further, the Defendant used cryptic labels on the mortgage statements of "Misc FC,BK Expenses" to deceive the borrowers as to the true nature of the property inspection fees being charged.

63.     The fraudulent misrepresentations were material and were known to be material by the Defendant and the Plaintiffs and the Class members relied upon the misrepresentations.

64.     When Defendant caused these statements and payment demands to be transmitted, Defendant knew that the property inspections and corresponding fees were unreasonable, inflated, unnecessary and too frequent and were not authorized by the terms of the mortgage contracts, Lender guidelines or applicable law.

65.     Defendant knew that it was generating substantial profit from its fraudulent scheme and that if the Plaintiffs and Class members had been aware of the scheme they would have challenged said fees and would not have paid them.

66.    Furthermore, Defendant induced and coerced Plaintiffs and members of the Class to enter into refinance agreements and loan modifications that caused these unwarranted fees to be refinanced into the principal owed to the Class' detriment and Defendant's profit.

67.    Since the Defendant was actively working with the Plaintiffs to work out a loan modification or short sale, the Defendant knew that the Plaintiffs resided in the property, yet it performed excessive property inspections under the guise of determining if the properties were occupied and maintained. Thus, there was no reasonable justification to do the inspections other than to gouge the Plaintiffs with illegal and inflated fees.

68.    Further, upon information and belief, some property inspections were charged to the Plaintiffs or member of the Class without actually having been completed.

69.    As a direct and proximate cause of these predicate acts, the Plaintiffs and Class Members were injured in their property. The Defendant's conduct, *inter alia*, inflated the amounts that Plaintiffs and the Class Members owe on their mortgage, caused Plaintiffs and the Class members to pay for excessive and unlawful property inspection, and caused Plaintiffs and member of the Class to incur other fees and charges that they would not have incurred otherwise such as late fees .

70.    Because this is a class action, and there were numerous acts of mail and wire fraud that were used to effectuate the scheme, it would be impracticable for Plaintiffs to plead all details of the scheme with absolute particularity. Therefore, Plaintiffs cannot plead the precise dates of all of Defendant's use of the U.S. mail and interstate wire facilities, and corresponding acts of mail and wire fraud, as this information cannot be alleged without access to Defendant's records.

71.    Defendant either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and the Plaintiffs and the Class members relied on

the misrepresentations and omissions. As such, the Plaintiffs and Class members have been injured in their business or property by the Defendant's repeated evident acts of mail and wire fraud, and by its and its vendors' aiding and abetting each other's acts of mail and wire fraud.

## PATTERN OF RACKETEERING

72.     Based on the foregoing predicate acts, the Defendant has engaged in a "pattern of racketeering activity" as defined by 18 U.S.C § 1961(5).

73.     The numerous and repeated acts of racketeering activity were committed or aided and abetted in the commission of said acts by the Defendant along with its property inspection vendors.

74.     Each act of racketeering activity had a similar purpose, results, participants, methods of commission, and victims, including Plaintiffs and Class members.

75.     The acts of racketeering activity are interrelated and pose a threat of continued racketeering activity.

76.     As a direct and proximate result of these violations of 18 U.S.C. §§ 1962(c) and (d), Plaintiff and Class members have suffered substantial damages. Under 18 U.S.C. § 1964(c), the Defendant is liable to Plaintiffs and Class members for compensatory damages, treble damages, together with all costs of this action, plus reasonable attorney's fees as well as any other relief as authorized.

## SECOND CAUSE OF ACTION

## Violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(a))

77.     The Plaintiffs repeat, reiterate and allege each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

78.     Section 1962(a) of RICO provides that "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity…in

which such person has participated as a principal within the meaning of § 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."

79.    As principals in an extensive pattern of racketeering activity the Defendant receive income and such income is, directly or indirectly, reinvested to finance continuing racketeering activity and also in the operation of the Selene Enterprise.

80.    Plaintiffs and Class members have been injured in their business or property by the predicate acts which make up the Defendant's pattern of racketeering activity and by its investment and reinvestment of said income to operate and continue the Selene Enterprise.

81.    Plaintiffs and Class members seek an award of compensatory damages, punitive damages, treble damages, together with all costs of this action, plus reasonable attorney's fees as well as any other relief as authorized.

**THIRD CAUSE OF ACTION**

**Violation of 18 U.S.C. § 1962(d) By Conspiring to Violate 18 U.S.C. § 1962(a) and (c)**

82.    The Plaintiffs repeat, reiterate and allege each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

83.    As contained herein, Defendant conspired to violate the provisions of 18 U.S.C. § 1962(a) and (c) in violation of 18 U.S.C. § 1962(d).

84.    In violation of 18 U.S.C. § 1962(d), the Defendant knowingly, willfully and unlawfully conspired to facilitate a scheme which included the operation or management of the Selene Enterprise through a pattern of racketing activity as alleged above.

85.     The Plaintiff and class members have been injured and continue to be injured in its business and property by Defendant's conspiracy in violation of 18 U.S.C. § 1962(d). The unlawful actions of the Defendant having directly, illegally and proximately caused and continue to cause injuries to Plaintiffs or their business or property.

86.     Specifically, Plaintiffs and Class members have been injured in their business or property in several ways, including paying unreasonable, fictitious and unwarranted inspection fees.

87.     Plaintiffs and Class members seek an award of compensatory damages, punitive damages, treble damages, together with all costs of this action, plus reasonable attorney's fees as well as any other relief as authorized.

## FOURTH CAUSE OF ACTION

### Violations of the Fair Debt Collection Practices Act ("FDCPA")

88.     The Plaintiffs repeat, reiterate and allege each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

89.     The Fair Debt Collection Practices Act ("FDCPA") strictly prohibits falsely representing the amount owed or any type of lying or charging fees that are not allowed by law or contract. By charging for unnecessary inspections, for inspections that were not even performed or by charging excessive and inflated inspection fees the Defendant violated FDCPA.

90.     Further, the blatant misrepresentations of the inspection fees as "Misc FC,BK Expenses" on the mortgage statements deceived borrowers as to the true nature of the fees.

91.     Section 1692e of the FDCPA prohibits a debt collector from using any false, or any deceptive or misleading representation or means in connection with the collection of a debt, including the false representation of the character, amount or legal status of any debt. *See* 15 U.S.C. § 1692e(2) and § 1692e(10).

92.     The Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

93.     The Defendant's frequent charging of excessive and unreasonable inspection fees and repeatedly misrepresenting said fees to the Plaintiffs and Class members under cryptic labels as lawful and legitimate are in violation of 15 U.S.C. §§ 1692e, 1692e(2) and 1692e(10) of the FDCPA for the use of any false representation or deceptive means to collect or attempt to collect any debt and for misrepresenting the reasonableness and legality of the debt owed.

94.     As set set forth above, the Defendant profits from fees assessed against the mortgage accounts it services and as such, servicers like the Defendant make tremendous profits from loans that are in default where it assesses repetitive, unnecessary and excessive fees and misrepresents those fees to the defaulted borrowers as reasonable and lawful. The immense profits generated from falsely representing the inspection fees under the deceptive label "Misc FC,BK Expenses" and also as lawful and reasonable fees motivated the Defendant to create, participate and conspire to perpetuate the illegal scheme to fleece the Plaintiffs by charging for and misrepresenting the excessive and inflated property inspection or charging for inspections that do not even occur.

95.     The least sophisticated consumer would understand the inspection fees to be legitimate and lawful and that they were required to pay the unreasonable and unnecessary inspection fees, if they could even ascertain what the "Misc FC,BK Expenses" fees truly represented.

96.     This misrepresentation to the Plaintiffs and Class members by the Defendant was intentional and did not result from a bona fide error as is evidenced by its cryptic labeling of the property inspection fees on the mortgage statements.

97.     The charge of property inspection fees after the Defendant became aware that the property was occupied and in good repair is a false representation or deceptive means to collect or attempt to collect a debt and is a blatant violation of FDCPA.

98.     Based on the foregoing, the Plaintiffs and the Class members are entitled to statutory damages, compensatory damages, punitive damages, equitable and declaratory relief, injunctive relief, punitive damages, costs and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

### Violation of the New York General Bus. Law §§ 349 et seq.

99.     The Plaintiffs repeat, reiterate and allege each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

100.    Section 349 of the New York State General Business Law ("GBOL") declares any "deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this State" to be unlawful.

101.    Section 349(g) of the New York State General Business Law provides that Section 349 "shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this State."

102.    Section 349(h) of the New York General Business Law provides a private right of action to any person injured by reason of a violation of that section, and authorizes the Court to award compensatory damages, statutory damages, and reasonable attorneys' fees to the prevailing Plaintiffs.

103.    Defendant's deceitful scheme, as more fully set forth above, was false, misleading and/or likely to deceive within the meaning GBOL section 349.

104.    Defendant's conduct caused and continued to cause substantial injury to Plaintiffs and other Class members and Plaintiffs have suffered injury in fact and have lost money as result of Defendant's unfair conduct.

105.    As set forth above, Defendant's scheme included charging unreasonable, unnecessary, fictitious and excessive inspection fees to Plaintiffs and Class members occurring in significant part in New York, which constitutes unlawful, unfair and deceptive business practices under the GBOL.

106.    The Defendant's deceptive and fraudulent scheme of charging unreasonable and unnecessary inspection fees while concealing said practice is purposeful and being practiced en masse to similarly situated consumers.

107.    As a direct and proximate result of Defendant's violations of GBOL § 349, Plaintiffs and the Class members are entitled to compensatory damages, punitive damages, equitable and declaratory relief, injunctive relief, punitive damages, costs and reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment

108.    The Plaintiffs repeat, reiterate and allege each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

109.    The Defendant was unjustly enriched to the detriment of the Plaintiffs and the Class members due to its scheme of charging excessive, fictitious and unnecessary inspection fees.

110.    It is against equity and good conscious to allow the Defendant to retain the funds obtained as a result of its deceptive scheme.

111.    Based on the above, the funds should be be returned to the Plaintiffs and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request on behalf of themselves and all others similarly situated, the Court to enter judgment against Defendant, as follows:

a) Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as the representatives of the Class, and designating their counsel as counsel for the Class;

b) A declaration that Defendant has committed the violations alleged herein;

c) An award of actual damages;

d) An award of punitive damages;

e) An award of treble the amount of damages suffered by Plaintiffs and members of the Class as proved at trial plus interest and attorney's fees and expenses pursuant to 18 U.S.C. § 1962(c) and (d);

f) An award of statutory damages pursuant to FDCPA, 15 U.S.C. § 1692(k);

g) Ordering Defendant to disgorge the payments and profits it wrongfully obtained at the expense of Plaintiffs and class members;

h) Ordering that restitution be made to Plaintiffs and class members for Defendant's unjust enrichment;

i) Ordering that an accounting be made by Defendant of its wrongfully obtained payments and profits;

j)   An injunction preventing Defendant from engaging in future fraudulent practices as permitted by law or equity, including directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution; and disgorgement of all monies acquired by Defendant by means of any act or practice declared by the Court to be wrongful;

k)   Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

l)   For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable as a matter of right.

DATED: Carmel, New York
          March 19, 2018

Respectfully Submitted,

THE LAW OFFICE OF RICK S. COWLE, P.C.

By:    _/s/ Rick S. Cowle_____
          Rick S. Cowle, Esq.
          *Counsel for the Plaintiffs and the Class*
          18 Fair Street
          Carmel, New York 10512
          Tel: (845) 225-3026
          Fax: (845) 225-3027
          RCowlelaw@comcast.net