UNITE D STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: March 21, 2019

MARK SILVESTER, KENDRA SILVESTER,
individually and on behalf of others similarly
situated,

Plaintiffs

vs.

SELENE FINANCE, LP,

Defendant.

No. 7:18-cv-02425 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

On or about March 19, 2018, Plaintiffs Mark Silvester and Kendra Silvester ("the Silvesters" or "Plaintiffs") commenced this class action against Selene Finance, LP ("Selene" or "Defendant") asserting multiple federal and state law claims. (ECF No. 1). The first three causes of action are brought pursuant to the federal Racketeer Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq*. The fourth cause of action is brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. The fifth cause of action is brought pursuant to New York General Business Law § 349 *et. seq*. The sixth cause of action is a claim for unjust enrichment.

Presently before the Court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure Rule 12 (b)(1) and 12 (b)(6). (ECF No. 14.) For the following reasons, the Defendant's motion is Granted.

## BACKGROUND

The following facts are derived from the Complaint (ECF No. 1) or matters of which the Court may take judicial notice and are accepted as true for the purposes of this motion.[1]

### The Bankruptcy Proceedings

Plaintiffs executed a promissory note and mortgage in the amount of $618,750.00 for the purchase of their home on August 25, 2006. (ECF No. 16, Ex. A.) The property is located at 2666 Amawalk Road in Katonah, New York. (*Id.*) Selene was the loan servicer for the mortgage. (Compl. ¶ 12.) Plaintiffs had difficulty making their mortgage payments and subsequently defaulted on their payment obligations. (Compl. ¶ 13.) Plaintiffs sought protection and filed a Chapter 13 Bankruptcy Petition on May 20, 2016. (ECF No. 19, Ex. D, Amended Chapter 13 Plan.) On August 7, 2017, Plaintiffs moved the bankruptcy court to approve a loan modification agreement between them and Selene concerning the mortgage. (ECF No. 19, Ex. H.) The loan modification agreement provided for a new balance or total cap owed of $229,007.29. (*Id.*) While the loan modification extended the loan term, reduced the interest rate and deferred a portion of the total amounts owed, no principle interest or fees were forgiven as part of the agreement. (*Id.*)

Selene was the attorney in fact representing the Wilmington Savings Fund Society, FSB, one of the creditors in the bankruptcy proceedings. (*Id.*) On August 29, 2017 the bankruptcy

---

[1] When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and which are either in the plaintiff's possession or which the plaintiff knew about when bringing suit, or matters of which judicial notice may be taken. *Brass v. Am. Film Techs, Inc.*, 987 F.2d 142, 150 (2d. Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 564 (S.D.N.Y. 2012). The Court may consider documents from a prior action when considering a motion to dismiss under Rule 12 (b)(6) based on *res judicata. TechnoMarine SA v. Giftports Inc.*, 758 F.3d 493, 498 (2d. Cir. 2014); *Day v. Moscow*, 955 F.2d 807, 811 (2d. Cir. 1992).

court issued an order approving the loan modification agreement. (ECF No. 19, Ex. I.; ECF No. 16, Ex. D.) The Court approved the modification in an Order pursuant to Fed.R.Bankr.P. 9019 (the "9019 Order") which simply approved the modification and authorized the parties to perform the loan modification according to its terms subject to the Bankruptcy discharge of the Debtors' personal obligations. (*Id.*) On March 19, 2018, during the pendency of the bankruptcy proceeding, Plaintiff filed the instant class action lawsuit. (ECF No.1.)

On April 25, 2018, the Chapter 13 Plan was confirmed by the bankruptcy court. (ECF No. 16, Ex. B., Bankruptcy Docket Report.) The bankruptcy court did not retain jurisdiction over matters beyond the issue of the debtors' default in the Chapter 13 plan. (ECF No. 19, Ex. D.) In a form filed with the bankruptcy court, the Plaintiffs claimed interest in the class action lawsuit as exempt from the administration of the Chapter 13 Plan. (ECF No. 19, F.)

On May 14, 2018, this District Court granted Defendant leave to file its motion to dismiss with the following briefing schedule: (1) moving papers to be served not filed on June 15, 2018, opposition to be served on July 16, 2018, and reply on July 31, 2018. (ECF No. 9.) On May 30, 2018 the Plaintiff petitioned the bankruptcy court to pursue a class action in the District Court. (ECF No. 19, Ex. C., Judge Drain Order.) On June 21, 2018 Judge Robert Drain issued an order lifting a stay under §362(d)(1) of the bankruptcy code allowing the plaintiffs to pursue a class action in federal district court on the basis that the litigation was a non-core matter.[2] (ECF No. 19. Ex. C., Judge Drain Order.)

**The Civil Action in this Court**

The Plaintiffs civil complaint relates to Defendant's activities and demands a trial by jury. (ECF No. 1.) Plaintiffs asserts claim that Defendant manages and administers its residential

---

[2] Judge Drain issued the order *nunc pro tunc*, which literally means in Latin "now for then." Black's Law Dictionary defines such an order as having "retroactive legal effect." *Black's Law Dictionary* (10th ed. 2014),

mortgage servicing tasks with an automated computer software program. (Compl. ¶ 22.) One such program is called the Selene Asset Resolution Application ("SARA"), a proprietary application used for default activities. (*Id.*) The software program is designed to manage borrowers' accounts and assess fees. (*Id.*) Whenever a borrower is in default, the Defendant's loan servicing platform will automatically order a property inspection without regard to actual need, warranted under the circumstances, or permitted by the mortgage contracts or applicable law. (*Id.*) Given that the process is automated, Defendant does not have employees involved in the determination as to whether a property inspection is reasonably necessary to protect its interests in the subject property. (Compl. ¶ 23.) Further, inspections are automatically ordered on a cyclical basis until such time as the borrower is no longer in default regardless of whether the property has been previously inspected, deemed occupied, well-maintained and in good condition. (Compl. ¶ 24.) The servicing platform is programmed to order unnecessary inspections and impose as many charges and fees as possible. (*Id.*) The Defendant orders multiple property inspections even after it is notified that the property is inhabited and in good condition. (*Id.*) The inspections include "drive-by" inspections, where the inspector drives by the property to ostensibly assess whether a house is occupied, being maintained and has not been damaged. (Compl. ¶ 26.) The Plaintiffs claim that it is suspect whether these inspections take place although the Defendant charges fees for them. (*Id.*)

The Plaintiffs allege that while they were in negotiations over the loan modification agreement with Selene, the Defendant charged unnecessary, unreasonable and extreme home inspection fees. (Compl. ¶ 16.) The Plaintiffs alleges inspections were purportedly designed to assess occupancy, but served no real purpose other than to generate fees. (Compl. ¶ 17.) The

---

*available at* Westlaw. A court typically enters the order to correct a clerical order in the record. (*Id.*) It appears Judge Drain issued the Order retroactive to the civil lawsuit that the Plaintiffs filed in this Court several months before.

Plaintiffs also allege that the Defendant did not conduct actual inspections on the property but still charged the fees. (Compl. ¶ 17.) Plaintiffs allege the enterprise includes Selene's "directors, employees and agents, long with its property inspection vendors." (Compl. ¶ 49.)

The Plaintiffs alleges that Defendant hid the nature of the fees on the mortgage statements provided to the Plaintiffs. (Compl. ¶ 25.) The Plaintiffs claim the Defendant labeled the inspection fees with a "cryptic name" or "Misc FC, BL Expenses." (*Id.*) The Plaintiffs claim tens of thousands of other borrowers "are believed to be" victims of the scheme. (Compl. ¶ 30.)

Plaintiff's mortgage agreement addresses the issue of inspections in several relevant paragraphs. Paragraph 7(b) of the Plaintiffs' mortgage agreement, entitled "Lender's Inspection of the Property," states in relevant part: "Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times … Before or at the time of inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection." (ECF No.16, Ex. A. at 13.)

Paragraph 9, entitled "Lender's Right to Protect Its Rights in the Property" spells out the lender's right to take action to protect the property if the borrowers' default. The provision lists a series of actions the lender may take to protect the property, including (a) protecting and/or assessing the value of the Property and (b) securing and/or repairing the Property. (*Id.* at 14.) The paragraph also states that "Lender can enter the property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and taken any other actions to secure the Property." (*Id.*) The agreement states that the borrowers agree to pay any amounts with interest, which the lender spends under this Section 9." (*Id.*) Paragraph 14 of the mortgage additionally provides that "Lender may charge me fees for services performed in connection with my default,

for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees." (*Id.* at 17.) The paragraph concludes that the Lender cannot charge fees that are prohibited by the Security Instrument or by Applicable law. (*Id.*)

While the Plaintiff's loan modification agreement signed on August 3, 2017, does not specifically address the issue of the home inspections, the agreement states that none of borrowers "obligations or liabilities" under the mortgage agreement "shall be diminished or released" by any provisions in the loan modification agreement. (ECF No. 19, Ex. H.) The loan modification further states that loan modification agreement cannot "impair, diminish or affect any of the lender's rights under or remedies" under the mortgage agreement or the law. (*Id.*)

## LEGAL STANDARD

A case is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal citation and quotation marks omitted). A plaintiff asserting subject matter jurisdiction must demonstrate by a preponderance of the evidence that it exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits ...." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In deciding a motion to dismiss, the Court may consider documents referenced in the complaint, documents the plaintiff relied on in bringing suit and which are either in the plaintiff's possession or which the plaintiff knew about when bringing suit, on matters which judicial notice may be taken. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d. Cir. 2002); *accord DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d. Cir. 2010).

## DISCUSSION

### I.    Jurisdictional Challenge Under 12(b)(1)

Defendant challenges Plaintiffs' lawsuit on jurisdictional grounds. First, Defendant argues that Plaintiff improperly brought the lawsuit under Title 28 U.S.C. § 1331 (district courts

have original jurisdiction of all civil actions arising under the Constitution, Laws or treaties of the United States) and § 1332 (diversity). (ECF No. 15, Defendant's Memorandum of Law In Support of Motion to Dismiss ("Def. Mem.") at 8-9.) Instead, Defendant claims the lawsuit should have been brought under Title 28 U.S.C. §1334. (*Id.*) However, Defendant misses the point. Even if Plaintiffs had filed under §1334(b), as a proceeding "related to" a case under the Bankruptcy Code, 28 U.S.C. §1334(b), the district court shares concurrent jurisdiction with the bankruptcy court. *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d. 513, 515 (2d. Cir. 1998)(affirming district court's award of supplemental fees to class counsel for time and expenses spent defending the settlement). Although Plaintiff and Defendant "may disagree over whether the Bankruptcy court may adjudicate the instant dispute, its jurisdiction is not dispositive." *Brock v. Thomas*, 782 F.Supp.2d 133, 139 ( E.D. Pa. 2011)(citing *In re W.R. Grace & Co.*, 591 F.3d 164, 170 (3d Cir. 2009)("Federal district courts 'have original jurisdiction but not exclusive jurisdiction of all civil proceedings arising under title 11 [of the Bankruptcy Code] or arising in or related to cases under title 11.'" ). Furthermore, there nothing on the face of the Complaint to suggest that pleading under §1331 was wrong. The Plaintiffs' fraud claims arise independently under federal law and their state claims share "a common nucleus of operative facts" with those federal claims. *United Mine workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 18 &1966); see also 28 U.S.C. §§1331; 1367 (2006).

Defendant further claims that the facts giving rise to Plaintiffs' causes of action are "intertwined" or "core" to the Plaintiffs' bankruptcy and associated loss mitigation proceedings. (Def. Mem. at 10.) Therefore, Defendant argues, that the Plaintiffs' class action is improperly before the Court because it is core to the bankruptcy proceeding and the Court lacks any nexus to the instant dispute. (*Id.*) Title 28 U.S.C. Section 157 delineates the difference between "core"

and "non-core" or "related" bankruptcy proceedings. "When a district court refers a case to the bankruptcy judge, that judge's statutory authority depends on whether Congress has classified the matter as a '[c]ore proceedin[g]' or '[n]on-core proceedin[g] ..." *Wellness Intern. Network Ltd. v. Sharif*, 135 S.Ct. 1932, 1940 (2015). Core proceedings are those that are unique to the bankruptcy proceeding or that directly affect the administration of the debtor's estate. *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 96 (2d. Cir. 2005). Determining whether a case is core or non-core is a threshold question: " ... it is upon this issue that questions of efficiency and uniformity will turn." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d. Cir. 1993).

Section 157 of the bankruptcy code plainly states:

> ... the bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law. §157(b)(3).

Thus, the statute "contemplates that the bankruptcy judge will determine, in the first instance, whether a matter is core or non-core." *In re Enron Corp.*, No. 03 Civ. 5078 (DLC) 2003 WL 2217695 at *2 (S.D.N.Y. 2003). Here, as the Plaintiffs correctly point out, Judge Robert D. Drain issued an Order deeming the claims raised in the class action lawsuit to be "non-core." The Defendant did not appeal that Order. Therefore, the jurisdictional issue that Defendant raises in its motion to dismiss is moot. In any event, even under a core analysis the claims are not "unique to the bankruptcy proceeding" and did not directly affect the debtor's estate, as reflected in the Chapter 13 plan and accompanying documents. Plaintiff's claims about the Defendant's inspection fees are fraud claims, which are separate and distinct from their obligations under the Chapter 13 plan. The Chapter 13 plan did not retain jurisdiction over these other claims as the Plaintiff points out in the brief. The Plaintiff also correctly points out that the Plaintiff's interest

in the subject class action is an exempt asset that is not necessary to administer the Chapter 13 plan. The Plaintiff's class action is neither a part of, nor necessary for the administration of the plan.

Furthermore, while Defendant is correct, that the Plaintiffs filed this action before the confirmation of the plan, they petitioned the Court to pursue the action in the district court *only after* the confirmation of the Chapter 13 plan. As mentioned, 28 U.S.C. 28 U.S.C. § 1334(b) limits the bankruptcy court's jurisdiction to proceedings arising in a bankruptcy case or arising under bankruptcy law. While Section 1334 does not expressly limit the bankruptcy court's post-confirmation jurisdiction, courts have concluded that "once confirmation occurs, the bankruptcy court's jurisdiction shrinks." *In re General Media, Inc.*, 335 B.R. 66, 73 (Bankr.S.D.N.Y. 2005); *Cantor v. Am. Banknote Corp.,* No. 06 Civ. 1392 (PAC), 2007 WL 3084966 at *3 (S.D.N.Y. Oct. 22, 2007); Guccione v. Bell, No. 06 Civ.492 (SHS), 2006 WL 2032641 at *4 (S.D.N.Y. July 20, 2006); *In re: Metro-Goldwyn-Mayer Studios Inc.,* 459 B.R. 550, 555 (Bankr.S.D.N.Y. 2011). "Consequently, to invoke the bankruptcy court's post-confirmation jurisdiction a party must show that the plan provides for the retention of jurisdiction over the dispute and that the matter has a 'close nexus to the bankruptcy plan or proceeding.'" *Metro-Goldwyn Studios Inc.*, 459 B.R. at 556 (citing *Allstate Ins. Co. v. Ace Secs. Corp.*, No. 11 Civ.1914(LBS), 2011 WL 3628852, at *4 (S.D.N.Y. Aug. 17, 2011); *In re Kassover*, 448 B.R. 625, 632–33 (S.D.N.Y. 2011); *DPH Ace Am. Ins. Co. v. DPH Holdings Corp.*, 437 B.R., 88, 97 (S.D.N.Y 2010); *General Media*, 335 B.R. at 73–74. The "close nexus" test is satisfied "when a matter affects the interpretation, implementation consummation, execution, or administration of the confirmed plan or incorporated trust agreement." *General Media*, 335 B.R. at 73 (quoting *Binder v. Price Waterhouse & Co. LLP* ( *In re Resorts Int'l*, Inc.) 372 F.3d, 154,168-69). However, when the

case has been fully administered and the resolution of the dispute will not affect creditors' interests, a bankruptcy court can decline to exercise post-confirmation jurisdiction. *Metro-Goldwyn-Mayer Studios Inc.*, 459 B.R. 550 at 556 (citing *Kassover*, 448 B.R. at 632-633; *General Media*, 335 B.R.at 75). Here, the close nexus test is not satisfied because the fraud claims are separate and distinct from the core bankruptcy proceedings. Plaintiffs' are seeking redress for illegal and fraudulent practices aimed at maximizing automated fees assessed on borrowers' accounts who had fallen into arrears on their mortgages, claims that are not specific to the Silvesters' bankruptcy proceedings. Moreover, it was evident by Judge Drain's Order that he did not view this dispute as having a close nexus to the bankruptcy plan's resolution and therefore, the Bankruptcy Court did not retain jurisdiction over the dispute.

Third, Defendants argue that they did not receive or were given a chance to object to Plaintiff's petition to file the class action lawsuit in District Court. (ECF No.18, Defendant's Reply Memorandum of Law in Support of Motion to Dismiss ("Def. Reply") at 5.) However, the bankruptcy court's docket for the case, No. 17-22685, shows that Judge Drain's June 21, 2018 Order was issued after a notice of presentment. In accordance with the Bankruptcy Court's Local Rule 9074-1, the movants obtained relief on a notice of presentment without a hearing, after serving the notice and motion on the necessary parties. In this case, an affirmation of service was filed by Plaintiff's attorney, which stated he served Defendant Selene on May 30th 2018 with an application to pursue the class action litigation in federal district court. (ECF No. 53.)[3]

## II.   *Res Judicata*

Defendant contends that the property fees Plaintiffs disputes or the "property preservation fees" were already litigated and therefore, Defendant argues that Plaintiffs' lawsuit is barred by

---

[3] This is the ECF docket number from the bankruptcy court's docket.

the doctrine of *res judicata*. (Def. Mem. at 4.) *Res Judicata* or claim preclusion, is a judicially created doctrine with the purpose of both giving finality to parties who have already litigated a claim and promoting judicial economy. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). To establish that case is barred under the doctrine of *res judicata*, the following elements are required: (1) the previous action involved an adjudication on the merits, (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were or could have been raised in the prior action. *Monahan v. New York City Dept. of Corrections,* 214 F.3d 275, 285 (2d. Cir. 2000).

Here, *res judicata* does not apply because the bankruptcy court's Chapter 13 plan did not result in the adjudication on the merits of the federal or state claims at bar. The Plaintiffs correctly point out that the 9019 Order did not resolve the litigation or specifically address the inspection fees, rather it merely allowed the Debtors' to enter into a mortgage loan modification agreement. While the loan modification extended the loan term, reduced the interest rate and deferred a portion of the total amounts owed back to the loan, no principle interest or fees were forgiven as part of the agreement. The Court approved the modification in an Order pursuant to Fed.R.Bankr.P. 9019 (the "9019 Order") which simply approved the modification and authorized the parties to perform the loan modification according to its terms subject to the Bankruptcy discharge of the Debtors' personal obligations.

Furthermore, since Judge Drain considered the proceedings to be non-core and Plaintiffs have demanded a jury trial in their Complaint, the bankruptcy court claims could not have been raised in the prior action. The Second Circuit has held that trials by jury for non-core proceedings in bankruptcy courts are constitutionally suspect. *In re Ben Cooper*, 896 F.2d 1394, 1403 (2d. Cir. 1990) ("Thus, the Seventh Amendment may well render unconstitutional jury

trials in non-consensual non-core proceedings, because of the requirement that findings of fact by the bankruptcy court be reviewed de novo by the district court.") Thus, *res judicata* does not apply in this instance.

## III. RICO Claims

Defendants argue that Plaintiffs fail to provide any facts with sufficient particularity supporting their RICO claim. (Def. Mem. at 13.) In order to state a claim for relief under RICO, "a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (internal citations and quotation marks omitted). To bring a civil RICO lawsuit, Plaintiff must show that a defendant violated the RICO state. *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 83 (2d. Cir. 2015). To demonstrate a violation of the RICO statute, the Plaintiff must plausibly allege "that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participating in an enterprise, the activities of which affected interstate or foreign commerce." *Lynch v. Amoruso*, 232 F.Supp.3d 460, 466 (S.D.N.Y. 2017) (quoting *Defalco v. Bernas*, 244 F.3d 286, 306 (2d. Cir. 2001)). A RICO enterprise consists of "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The Second Circuit has made it very clear that "if a plaintiff alleges a corporation to be a RICO 'person' and seeks to hold it liable for § 1962(c) violations, the RICO 'enterprise' cannot consist solely of the corporation plus its owners and/or employees." *4K &D Corp. v. Concierge Auctions, LLC*, 2F.Supp.3d 525, 536 (2d. Cir. 2014); see also *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d. Cir. 2013); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.* 30 F.3d 229, 244 (2d. Cir. 1994). This is

essentially what's been dubbed the distinctness requirement." *Sky Medical Supply Inc. v. SCS Support Claims Services, Inc.,* 17 F.Supp.3d 207, 223 (E.D.N.Y. May 7, 2014).

**Predicate Acts**

To demonstrate a "pattern of racketeering activity" under RICO, Plaintiffs must plausibly allege the commission of at least two predicate acts. See 18 U.S.C. § 1961 (5); *Defalco*, 244 F.3d at 306. Section 1961 (1) defines "racketeering activity" to include a number of various "predicate acts" including section 1341 and 1343 (mail and wire fraud, respectively). Plaintiffs must plead with specificity how defendants utilized the postal service or interstate wires to commit fraudulent acts. *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d. Cir. 2008); *Grimes v. Fremont Gen Corp.*, 785 F.Supp. 2d 269, 301 (S.D.N.Y. 2011) ("Plaintiffs' conclusory allegation that Defendants had a pattern of using the mail and wires to commit fraudulent acts … without any specifics, fails to meet the particularity requirements of 9(b).").

A plaintiff in a RICO claim who alleges racketeering activity based on the predicate acts of violating mail or wide fraud statutes must prove three elements: (1)scheme to defraud, including proof of intent; (2) money or property as the object of the scheme (3) use of mails or wires to further scheme. *Bigsby v. Barclays Capital Real Estate, Inc.*, 170 F.Supp.3d. 568, 575 (S.D.N.Y. 2016) (quoting *4 K &D Corp. v. Concierge Auctions LLC*, 2 F.Supp.3d 525, 539 (S.D.N.Y. 2014)(quoting *City of N.Y.v. Cyco.Net, Inc.,* 383 F.Supp.2d 526, 552 (S.D.N.Y. 2005). To maintain a claim of fraud, a plaintiff must (1) show a legal duty separate from the duty to perform under the contract or (2) demonstrate that Defendants made a fraudulent

misrepresentation that was "collateral or extraneous to the contract." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 21 (2d. Cir. 1996) (internal citations omitted).

**Heightened Pleading Requirement**

"Courts have repeatedly warned against attempts by plaintiffs to mold their claims to the RICO form even though their injuries do not fall within those intended to be addressed by the Act. The alleged predicate acts of mail and wire fraud merit particular scrutiny lest the courts allow the RICO statute to federalize garden-variety state common law claims." *Bigsby,* 170 F.Supp. 3d at 575. Courts look to Rule 9(b)'s heightened pleading standard in an effort to ward off specious claims.. Fed.R.Civ.P. 9(b); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 687 (2009); *Biwen Liang v. Home Reno Concepts, LLC,* No. 17-CV-3503-SJB2018 WL 4954162 at *6 (S.D.N.Y. 2018).

To comply with Rule 9(b) a complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank,* N.A., 459 F.3d 273, 290 (2d. Cir. 2006)(citing *Mills v. Polar Molecular Corp.,* 12F.3d 1170, 1175 (2d Cir. 1993)).

Crucial to the success of their RICO claim, Plaintiffs have failed to meet the heightened pleading requirements of 9(b). First, Plaintiffs have failed to identify with specificity which individuals or entities were engaged in the alleged mail and wire fraud so Defendants may have sufficient notice of the parties involved. Furthermore, they have also failed to plead facts that suggest a RICO enterprise was at work in this case. Plaintiffs contend Selene employees are the members of the enterprise, but such a claim fails as a matter of law, given that Courts in this Circuit have repeatedly held that corporation cannot be simultaneously a RICO "person" and a

RICO "enterprise." Plaintiffs have failed to allege the existence of a RICO enterprise because they have filed to identify any of the parties to have alleged to participate in the enterprise other than Defendant Selene. Instead, they only state generally "upon information and belief" that Selene's "director's employees, and agents, along with its property inspection vendors" are involved in the scheme.

Furthermore, the Plaintiffs have failed to allege any RICO predicate acts. Specifically, Plaintiffs alleged a fraudulent scheme or an intent to defraud. But, the plain language set forth in the Plaintiffs' mortgage agreement, which the subsequent loan modification agreement did not modify, states that the lender "may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees." To the extent Plaintiffs have a problem with this language, it is a contract dispute but does not rise to a fraudulent misrepresentation that is collateral or extraneous to the contract. Plaintiffs allegations that the inspections were excessive, is a question of whether or not their conduct was reasonable under the contract but does not implicate fraud concerns. The allegation that Defendants "cryptically listed property preservation fees" on monthly mortgage statements, again, relates to matters negotiated in the mortgage agreement. Certainly, bills and statements from a lender may be confusing or "cryptic" but that does not rise to the level of an allegation that the Defendants willfully defrauded Plaintiffs.

## IV.     Fair Debt Collection Practices Act

Defendants do not allege that Plaintiffs' fail to assert plausible FDCPA claims. The Court, however, will still address the validity of all of Plaintiffs' remaining claims to ensure the clarity of the opinion. The purpose behind the FDCPA is to "eliminate abusive debt collection practices

by debt collectors" and to "protect consumers against debt collection abuses." 15 U.S.C. §1692 (e). A plaintiff must plead four elements under the statute: (1) plaintiff is a person who was the object of efforts to collect a consumer debt (2) the defendant is a "debt collector"; and (3) the defendant has engaged in an act or omission in violation of the FDCPA's requirements. *Cohen v. Ditech Fin. LLC,* 15-CV-6828, 2017 WL 1134723, at *5 (E.D.N.Y. March 24, 2017) (citing *Scaturro v. Northland Grp.*, No. 16-cv-1314, 2017 415900 at *2 (E.D.N.Y. Jan. 9, 2017)). The statute prohibits debt collectors from employing "any false, deceptive, or misleading representation or means in connection with the collection of a debt." 15 U.S.C. §1692e.

The statute defines "debt collector" as one "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692 (a)(6). There is a split in opinion over whether the FDCPA applies in the foreclosure context. *Williams v. Bayview Loan Servicing LLC*, No. 14-CV-7427 (KAM) (LB) 2016 WL 8711209 at *7 (E.D.N.Y. January 22, 2016)(citing Alexandra Vozza, The FDCPA's Application to the Foreclosure Process, 24 Loy. Consumer L. Rev. 640, 651-655 (2012)). The statute is silent as to whether foreclosure constitutes "the collection of any debt." Some court have held that foreclosure actions that do not seek money judgments against Plaintiffs are not debt collection activities for purposes of the FDCPA. *Boyd v. J.E. Robert Co.*, No. 14-CV-7427 (KAM) (LB)2013 WL 5426969 at *9 (E.D.N.Y. September 27, 2016); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F.Spp.2d 311, 325 (D.Conn. 2012)( "[I]t appears that a majority of courts who have addressed this question have also concluded that foreclosing on a mortgage does not qualify as debt collection activity for purposes of the FDCPA."). Other courts have suggested that a mortgage servicer is a 'debt collector' within the

meaning of the FDCPA if the mortgage was in default at the time the servicer began servicing the debt. However, where a mortgage servicer obtains a loan that is not in default, it is not a debt collector within the meaning of the FDCPA. *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 83-84 (2d.Cir. 2003); *Zirogiannis v. Seterus, Inc.*, 221 F.Supp.3d 292, 302 (E.D.N.Y. 2016).

Plaintiffs cannot meet their burden. First, the Defendant Selene was a loan servicer who was working on behalf of the creditor to conduct home inspections and charging fees for those home inspections. Here, the Plaintiff is not alleging Defendant's principal purpose was "debt collection" as required by the statute. Second, the Plaintiffs have not alleged that Defendant Selene participated in any debt collection activities, rather Defendant was merely charging fees pursuant to the loan agreement. Third, the Plaintiffs have failed to allege that Defendant' only began servicing the loan when they were already in default, to back up their conclusory allegation that Defendants are "debt collectors" within the meaning of the act. Without more, Plaintiff's cannot sustain their claim.

Moreover, even if Defendant qualified as a debt collector under the statute, plaintiff's claim would still fail. In a case with similar facts, a sister court in the SDNY pointed out that charges for property inspections do not amount to misrepresentations when a plaintiff's mortgage agreement explicitly authorizes property inspections and their monthly bill refers to them. *Weir v. Cenlar FSB*, No. 16-CV-8650 (CS) 2018 WL 3443173 at *9-10 (S.D.N.Y. July 17, 2018). One factual difference between the *Weir* case and the present case is that here, the inspection fees labels on the mortgage statement were labeled as "MISC. FEES," what could be construed as less clear than "FEE PROPERTY INSPECT." Yet, this slight change in the facts does not rise to the level of a false representation. The mere fact that Plaintiff complains the fees are unreasonable under the agreement, or that Defendant took advantage of the agreement to charge

18

an excessive number of fees, is not tantamount to a *false representation. Id.*; *see also Tardibuono-Quigley v. HSBC Mortgage Corporation*, No. 16-CV-8650 (CS) 2017 WL 1216925 at *11 (analyzing similar arguments in the RICO context and finding that the charges listed as "AUTO PPTY INSPEC" did not constitute mail or wire fraud). In the alternative, Plaintiff's additional claim, that the Defendant failed to actually inspect and yet still charged fees, also fails. Plaintiff pleads "upon information and belief" that vendors did not inspect the properties. This does not satisfy the pleading requirements under 12(b)(6). Plaintiffs allege no other facts that suggest Defendant did not inspect the property.[4]

## V.    New York General Business Law § 349.

Defendant did not address this claim as well. Plaintiffs allege that as a result of the concealed home inspection fees they lost money as a result of Defendant's conduct. Plaintiffs assert that under § 349(h) they are entitled to compensatory and statutory damages, as well as reasonable attorneys' fees to the prevailing Plaintiffs. New York State law prohibits any "deceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service" within New York. N.Y. Gen. Bus. Law. § 349 (McKinney's 2011) ("§ 349"). To meet their burden, Plaintiffs must allege (1) a deceptive consumer-oriented act or practice which is "misleading in a material respect, and (2) injury resulting from the act." *Fleisher v. Phoenix Life Ins. Co.*, 858 F.Supp.2d 290, 304 (S.D.N.Y. 2012) (quoting *Exxonmobil Inter-America, Inc. v. Adv. Info. Eng'g Servs., Inc.*, 328 F.Supp. 2d 443, 447 (S.D.N.Y. 2004)). The New York Court of Appeals "has established an objective standard for determining whether acts or practices are materially deceptive or misleading 'to a reasonable consumer acting under the circumstances.'" *Jensen v. Cablevision Systems Corporation*, No. 2:17-cv-100 (ADS)(AKT) WL

---

[4] Plaintiffs submit an affidavit where they attest to this fact, but the Court cannot consider this affidavit in a motion to dismiss. *Supra* note 1.

955239 (E.D.N.Y. February 27, 2019) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)). Typically, whether an act or practice is deceptive is a question of fact. *Quinn v. Walgreen Co.*, 958 F.Supp.2d 533, 543 (S.D.N.Y. 2013). However, a court may make this determination as a matter of law. *Oswego*, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741; *accord Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d. Cir. 2013), aff'g 837 F.Supp.2d 279 (S.D.N.Y. 2011). Courts have been reluctant to find a practice is materially misleading if the terms if Defendant fully disclosed the terms and conditions of the alleged deceptive transaction that caused harm to the Plaintiff. *Derbaremdiker v. Applebee's Intern., Inc.*, No. 12–CV–01058 (KAM) 2012 WL 4482057 at *4 (E.D.N.Y. 2012) (collecting cases), aff'd, 519 App'x 77 (2d Cir. 2013).

To qualify for § 349 liability, an act must be "consumer-oriented." *Id.* at 304. A successful claim for a consumer-oriented deception turns on whether Plaintiff can allege that the disputed acts or practices "have a broader impact on consumers at large." *Id.* (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25, (1995)); *see also Harary v. Allstate Ins*. Co., 983 F.Supp. 95, 99 (E.D.N.Y. 1997)("conclusory assertion" of "injur[ies][to] the public at large is insufficient" to state a consumer protection claim). The New York Court of Appeals has held that private contract disputes, unique to the parties, does not fall within the statute's ambit. *Oswego Laborers*, 623 N.Y.S. at 532. Moreover, a § 349 claim must allege injury resulting from the deceptive act or practice. *Id.* The loss suffered because of Plaintiff's breach of § 349 must be independent of the loss alleged under the breach of contract claim. *Id.* (citing *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d. Cir. 2009)).

Plaintiffs alleges that Defendant's billing tactics misled customers by not clearly identifying the sources of the charges. The Court finds the Plaintiffs' claim unpersuasive. While

Plaintiffs may have a compelling argument that Defendants charges were unreasonable or unnecessary pursuant to the loan agreement, this loss or injury is not the result of a deceptive business practice but rather akin to a breach of contract claim. The loan agreement clearly provided for these additional charges and, therefore, Plaintiff has failed to allege how they were materially deceptive, other than the fact that perhaps they were obtusely marked as miscellaneous fees. Furthermore, other courts have held that charging loan servicing fees for mortgage loan defaults are not deceptive under of § 349 if there is no express limitation on the appropriate amount of default-related service fees and there is no violation of federal and state statutes. Weir, 2018 WL 3443173 at *14; *Mendez v. Bank of America Home Loans,* 840 F.Supp.2d 639, 659 (E.D.N.Y. 2012). Here, there was no express limitation –other than the inspections be "reasonable" and plaintiff has not successfully pled any other violation of state or federal law.

## VI.    Unjust Enrichment

Furthermore, under New York law, an unjust enrichment claim requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d. Cir. 2000)(internal quotation marks omitted). *Hinds v. Option One Mortg. Corp.*, No. 11-CV-06149 (NGG)(RER) 2012WL 6827477 at *7 (E.D.N.Y. Dec 6, 2012) (Report & Recommendation), adopted by 2013 WL 132719 (E.D.N.Y. Jan 10, 2013) ("Plaintiff has made no allegations that Defendants have improperly retained any surplus from the sale beyond the loan funds and additional out-of-pocket expense to which they are entitled.").Where  an enforceable contract governs the disputed matter, a cause of action for unjust enrichment cannot be sustained. *Speedfit LLC v. Woodway USA, Inc.,* 53 F.Supp.3d 561, 580 (E.D.N.Y. 2014)("A cause of action for unjust enrichment sounds in

quasi-contract and cannot lie where an enforceable contract governs the disputed matter.")(citing *Labajo v. Best Buy Stores, L.P.*, 478 F.Supp.2d 523, 530-531 (S.D.N.Y. 2007)(internal citations omitted).

In the present case, Plaintiffs have failed to plead that Selene Finance was unjustly enriched, that is, that the Defendant received anything beyond what it was entitled to under the Loan Modification Agreement. Here, Plaintiffs doe not plead any facts suggesting Defendant improperly retained any surplus amounts. The mortgage loan agreement allowed Defendant to collect fees for home inspections in the case of default. There was an enforceable contract that governed when Defendant could perform and charge for inspection fees. Plaintiffs essentially allege that the number of inspections Defendant undertook pursuant to the contract was unreasonable. Since the unjust enrichment claim is merely asserted as a breach of contract, the claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiffs' Complaint is GRANTED. The motion is granted without prejudice. Plaintiffs' have 45 days to file an amended complaint consistent with the Court's opinion. Otherwise, the Court will deem the case dismissed. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 14. This constitutes the Court's Opinion and Order.

Dated:   March 21, 2019                      SO ORDERED:
        White Plains, New York

                                          NELSON S. ROMÁN
                                   United States District Judge