UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK SILVESTER; KENDRA SILVESTER; Individually and on Behalf of All Others Similarly Situated,

                      Plaintiffs,

              -against-

SELENE FINANCE, LP,

                      Defendant.

**MEMORANDUM OPINION AND ORDER**

18-CV-02425 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiffs Mark Silvester and Kendra Silvester (collectively, "Plaintiffs"), bring this putative class action against Selene Finance, LP ("Defendant") alleging various violations of federal and New York State law in connection with Defendant's servicing of the loan ("Mortgage") between Plaintiffs and JP Morgan Chase Bank, N.A. (the "Lender").

The initial Complaint alleged: (1) three violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; (2) a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; (3) a violation of N.Y. General Business Law § 349; and (4) unjust enrichment. (Doc. 1, "Compl."). Defendant sought dismissal of that pleading, (*see* Docs. 14-20), and, on March 21, 2019, Judge Román issued an Opinion & Order ("Prior Ord.") dismissing the action without prejudice under Federal Rule of Civil Procedure 12(b)(6). (Doc. 21, "Prior Ord.").[1]

The Amended Complaint, filed on May 1, 2019, asserts eight claims of relief, the bulk of which were considered in the Prior Order: (1) a RICO violation under 18 U.S.C. § 1962(c); (2) a

---

[1] The Prior Order is available on commercial databases. *See Silvester v. Selene Fin., LP*, No. 18-CV-02425, 2019 WL 1316475 (S.D.N.Y. Mar. 21, 2019). However, for ease of reference, the Court cites herein the copy of the Prior Order filed on the docket.

RICO violation under 18 U.S.C. § 1962(a); (3) a conspiracy to violate RICO under 18 U.S.C. § 1962(d); (4) violation of the FDCPA; (5) violation of N.Y. General Business Law § 349 on behalf of a proposed national class; (6) violation of N.Y. General Business Law § 349 on behalf of a proposed New York class; (7) breach of contract on behalf of a proposed national class; and (8) breach of contract on behalf of a proposed New York class. (Doc. 22, "Am. Compl." ¶¶ 55-190).[2]

Defendant moved to dismiss the Amended Complaint under Rule 12(b)(6) on January 7, 2020. (Doc. 31; Doc. 32, "Def. Br.").[3] Plaintiffs opposed the motion on March 9, 2020 (Doc. 35, "Opp. Br.")[4], and the motion was briefed fully with the filing of Defendant's reply brief on March 18, 2020 (Doc. 34, "Reply Br."). This case was reassigned to this Court thereafter on April 3, 2020.

For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

---

[2] Annexed to the Amended Complaint are: (1) a letter advising that Defendant would assume "servicing responsibility for" the Mortgage (Doc. 22-1); (2) a letter explaining that the Lender was transferring the Mortgage (Doc. 22-2); (3) a billing statement from Defendant dated February 17, 2015 (Doc. 22-3); (4) an affidavit filed on Defendant's behalf in the New York State Supreme Court (Doc. 22-4); (5) a proof of claim filed in Plaintiffs' Chapter 13 proceeding in U.S. Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") (Doc. 22-5); and (6) Plaintiffs' Affidavit ("Affidavit") (Doc. 22-6, "Pl. Aff.").

[3] Although filed in different docket entries, defense counsel filed a Declaration submitting four extraneous documents for the Court's consideration on this motion. (*See* Doc. 33). The documents are copies of the following: (1) the Mortgage and corresponding promissory note (Doc. 32-1, "Mortg."); (2) the docket from the Bankruptcy Court (Doc. 32-2); (3) a motion to the Bankruptcy Court seeking approval of a loan modification (Doc. 32-3); and (4) an Order of the Bankruptcy Court approving the loan modification (Doc. 32-4). Each of these documents is proper to consider at this stage. *See Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014) ("[T]he Court is entitled to consider . . . the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence."); *Marom v. Town of Greenburgh*, No. 20-CV-03486, 2021 WL 797648, at *2 n.5 (S.D.N.Y. Mar. 2, 2021); *Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011).

[4] Plaintiffs also filed extraneous documents for the Court's consideration. The form of Plaintiffs' submission, however, does not comply with Local Civil Rule 7.1(a)(3) of the U.S. District Courts for the Southern and Eastern Districts of New York, as the documents were attached to a legal brief instead of an affidavit or declaration. (*See* Opp. Br.). Despite this issue, the error is generally harmless because the majority of the documents were attached to the Amended Complaint (Doc. 35-3), submitted in proper form by Defendant (Doc. 35-2), or need not be filed separately (Doc. 35-1, Doc. 35-5). The remaining document appears to be a billing statement that reflects a payment due on May 1, 2016. (Doc. 35-4). Even if the Court disregarded Plaintiffs' violation of Local Civil Rule 7.1(a)(3) as to this document—which it does not—it would not alter the analysis contained herein.

**BACKGROUND**

While the Complaint consisted of one hundred eleven paragraphs (exclusive of the prayer for relief) and pressed six claims for relief over twenty-three pages, the Amended Complaint presents one hundred ninety paragraphs (exclusive of the prayer for relief) and asserts eight claims for relief over thirty-five pages. (*Compare* Compl., *with* Am. Compl.). The Court assumes the parties' familiarity with the factual allegations as laid out in the Prior Order (Prior Ord. at 2-6) and incorporates the new factual allegations where appropriate *infra*.

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

3

statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

In addition, the Federal Rules of Civil Procedure require a heightened level of specificity when pleading claims sounding in fraud. Specifically, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), "the who, what, when, where, and how: the first paragraph of any newspaper story." *Backus v. U3 Advisors, Inc.*, No. 16-CV-8990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017) (quoting *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 520 (S.D.N.Y. 2014)).

## ANALYSIS

I. The RICO Claims

The first three claims allege violations of the RICO Act; the Court addresses each *seriatim*.

A. Section 1962(c)

As to the first RICO claim, the statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To state a claim under this provision, Plaintiffs "must allege 'the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce.'" *Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 179-80 (S.D.N.Y. 2020) (quoting *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)).

Defendant argues that Plaintiffs did not allege: (1) the existence of an enterprise affecting interstate commerce; or (2) predicate acts upon which to base the enterprise allegations. (Def. Br. at 10-15).

Under RICO, an "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This broad definition "has a wide reach." *Red Fort Capital, Inc v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 467 (S.D.N.Y. 2019) (quoting *Boyle v. United States*, 556 U.S. 938, 944 (2009)). "The Supreme Court has explained that a RICO enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Where, as here, a plaintiff maintains that the enterprise exists as "an association in fact," (Am. Compl. ¶ 66), the Supreme Court has explained that the "enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. However, "a defendant and the enterprise must be distinct." *DeFalco v. Bernas*, 244 F.3d 286, 307 (2d Cir. 2001) (collecting cases).

Plaintiffs pled that "Defendant was a 'person' within the meaning of RICO," (Am. Compl. ¶ 62), and that "Defendant, including its directors, employees and agents, along with the third party unrelated Inspection Companies constitute[d] an association-in-fact enterprise . . . ." (*id*. ¶ 66). The enterprise's common purpose was to "maximiz[e] . . . profits by charging unnecessary and repeated default-related fees to Plaintiffs and [c]lass members," (*id*. ¶ 67), but Plaintiffs offer no plausible factual basis to support this assertion. Plaintiffs pled that once a mortgage is in default,

5

"Defendant's loan servicing platform will automatically order a property inspection without regard to actual need, warranted under the circumstances, or permitted by the mortgage contracts or applicable law." (Am. Compl. ¶ 32). These inspection requests in every default are generated by a computer program, without human intervention, and sent automatically to the third-party vendors. (*Id*. ¶¶ 33-34, 69). Accordingly, while Plaintiffs maintain that some inspections were unnecessary or not actually performed by the vendors, (*see id*. ¶¶ 43, 49(j), 65, 69), the allegations provide no basis to believe that Defendant and its vendors shared a common purpose aside from the fact that Defendant's computer program ordered inspections, (*id*. ¶¶ 67-70).

In short, although Plaintiffs' allegations as to the enterprise need only meet the notice requirements of Federal Rule of Civil Procedure 8, *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 666 (2d Cir. 2014), the Amended Complaint does not meet this standard. *See, e.g.*, *Oriska Ins. Co. v. Avalon Gardens Rehab. & Health Care Ctr., LLC*, No. 18-CV-1030, 2019 WL 4195267, at *10 (N.D.N.Y. Sept. 4, 2019) (noting that the plaintiff "has not offered any plausible, non-conclusory allegations about the . . . unified function or purpose of the enterprise"), *appeal dismissed as moot*, 826 F. App'x 117 (2d Cir. 2020); *Weir v. Cenlar FSB*, No. 16-CV-08650, 2018 WL 3443173, at *6 (S.D.N.Y. July 17, 2018); *Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*, No. 15-CV-6940, 2017 WL 1216925, at *6 (S.D.N.Y. Mar. 30, 2017); *Frederick v. Capital One Bank (USA), N.A.*, No. 14-CV-5460, 2015 WL 5521769, at *10 (S.D.N.Y. Sept. 17, 2015).

Even if Plaintiffs pled adequately the existence of an enterprise, they fail separately to plead the requisite predicate acts. Under RICO, a "pattern of racketing activity" exists if there are "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The definition

of "racketeering activity" encompasses, as relevant here, mail and wire fraud. 18 U.S.C. § 1961(1); (*see e.g.*, Am. Compl. ¶¶ 72-77; Opp. Br. at 10-12). Where "a plaintiff in a RICO claim alleges racketeering activity based on the predicate acts of violating the mail or wire fraud statutes, he or she must prove three elements: (1) scheme to defraud, including proof of intent; (2) money or property as object of scheme; [and] (3) use of mails or wires to further the scheme." *Bigsby v. Barclays Capital Real Estate, Inc.*, 170 F. Supp. 3d 568, 575 (S.D.N.Y. 2016) (quoting *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 539 (S.D.N.Y. 2014)). However, it is well established that where the "mail and wire fraud allegations are nothing more than breach of contract claims," they do not qualify as predicate acts. *Id.* at 577 (internal quotation marks omitted); *see also LCS Grp., LLC v. Shire LLC*, No. 18-CV-2688, 2019 WL 1234848, at *10 (S.D.N.Y. Mar. 8, 2019) ("As the Second Circuit has stated, '[a] breach of contract does not amount to mail fraud.'" (quoting *United States v. D'Amato*, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994) (alteration in original))). As such, in addition to meeting the heightened pleading standard imposed by Rule 9(b), *D. Penguin Bros.*, 587 F. App'x at 666, the predicate acts cannot simply be contract breaches restyled as RICO violations, *see Lefkowitz v. Reissman*, No. 12-CV-8703, 2014 WL 925410, at *4 (S.D.N.Y. Mar. 7, 2014) (noting that court must be wary of situations where individuals "attempt[] 'to mold their claims to the RICO form even though their injuries do not fall within those intended to be addressed by the Act'" (quoting *Rosenson v. Mordowitz,* No. 11-CV-6145, 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012))).

A review of the Amended Complaint reveals that the purported predicate acts are, in actuality, nothing more than attempts to masquerade contract violations as a RICO claim. (*See e.g.*, Am. Compl. ¶ 76 (claiming mail fraud where Defendant sent "correspondence which showed . . . unnecessary and false . . . fees"), ¶ 77 (claiming wire fraud because Defendant "transmitted

7

and received . . . mortgage statements, agreements, correspondence, wire transfers and inspection reports . . . .")). This, by itself, is sufficient to warrant dismissal of the claim. (*See* Prior Ord. at 16). However, even if that were not the case and Plaintiffs had identified frauds unrelated to obligations under the contract, the predicate acts have not been pled with the requisite particularity. Rule 9(b) requires that Plaintiffs "identify 'the contents of the communications, who was involved, and where and when they took place, and explain why they were fraudulent.'" *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 466 (S.D.N.Y. 2017) (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008)). Plaintiffs have not done so, and affirmatively concede that fact:

> Because this is a class action, and there were numerous acts of mail and wire fraud that were used to effectuate the scheme, it would be impracticable for Plaintiffs to plead all details of the scheme with absolute particularity. Therefore, Plaintiffs cannot plead the precise dates of all of Defendant's use of the U.S. mail and interstate wire facilities, and corresponding acts of mail and wire fraud, as this information cannot be alleged without . . . Defendant's records.

(Am. Compl. ¶ 89). This is simply incorrect; Plaintiffs could have identified specific months and improper charges, but actively chose not to plead even their personal claims of mail and wire fraud with the specificity required by Rule 9(b). *See Malvar Egerique v. Chowaiki*, No. 19-CV-3110, 2020 WL 1974228, at *10 (S.D.N.Y. Apr. 24, 2020); *Backus*, 2017 WL 3600430, at *9.

The first claim for relief is therefore dismissed for failure to plead the existence of an enterprise or predicate acts necessary to state a claim.

   B. Section 1962(a)

As for the second claim for relief, the applicable provision of the statute states:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C.A. § 1962(a). In order to state a claim for relief under this provision, a plaintiff must allege: "(1) that the defendant received income from a pattern of racketeering activity; and (2) that the plaintiff was directly harmed by the defendant's use or investment of that income." *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 448 (S.D.N.Y. 2004) (citing *Ouaknine v. MacFarlane*, 897 F.2d 75, 82 (2d Cir. 1990)).

As Plaintiffs failed to plead the existence of an enterprise or predicate acts under § 1962(c), the claim for relief under § 1962(a) must also be dismissed. *See Kelco Constr., Inc. v. Spray in Place Sols., LLC*, No. 18-CV-5925, 2019 WL 4467916, at *5 (E.D.N.Y. Sept. 18, 2019) ("Thus, like claims under Section 1962(c), civil RICO claims under Section 1962(a) require a plaintiff to allege, *inter alia*, a pattern of racketeering activity and an enterprise."); *McCaffrey v. Cty. of Nassau*, No. 11-CV-1668, 2013 WL 2322879, at *7 (E.D.N.Y. May 25, 2013) (explaining that any claim brought under § 1962 "requires that the plaintiff establish a pattern of racketeering activity" (internal quotation marks omitted)).

  C. <u>Section 1962(d)</u>

The final RICO claim is one for conspiracy. According to the applicable statutory language, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Where, as here, "Plaintiffs have not adequately ple[d] a substantive RICO violation, the conspiracy claim under § 1962(d) also fails." *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 618 (S.D.N.Y. 2015) (internal quotation marks omitted, collecting cases); *see also Siddique v. Anwar*, No. 15-CV-4278, 2017 WL 8776968, at *5 (E.D.N.Y. Dec. 8, 2017) ("A claim under § 1962(d) based on a conspiracy to violate the other subsections of § 1962 necessarily must fail if the substantive claims are themselves deficient." (collecting cases)). This claim for relief is, accordingly, dismissed.

9

II. <u>The FDCPA Claim</u>

The fourth claim for relief complains that Defendant violated the FDCPA by "charging . . . excessive, false, deceptive, misleading, and unreasonable inspection fees, many for which the inspection never took place, and repeatedly misrepresenting said fees to the Plaintiffs and [c]lass members under cryptic labels . . . ." (Am. Compl. ¶ 116; *see also id*. ¶¶ 107-24). Defendant argues that this claim should be dismissed because: (1) Plaintiffs failed to plead facts supporting the belief that Defendant qualifies as a "debt collector" within the meaning of the FDCPA; (2) there is no misrepresentation, as the Mortgage allowed the charges; and (3) Plaintiffs did not plead facts sufficient to establish that Defendant knew it charged Plaintiffs for inspections that the vendors did not actually perform. (Def. Br. at 16-18).

Judge Román concluded in the Prior Order that even if Defendant met the definition of debt collector under the FDCPA, the claim that "the fees are unreasonable under the agreement, or that Defendant took advantage of the agreement to charge an excessive number of fees, is not tantamount to a *false representation*." (Prior Ord. at 18-19 (citing *Weir*, 2018 WL 3443173, at *9-10; *Tardibuono-Quigley*, 2017 WL 1216925, at *11) (emphasis in original)). This point remains valid, as neither the facts alleged nor the law applied have changed. Nevertheless, Plaintiffs seek to overcome this issue by annexing the Affidavit as an exhibit to their Amended Complaint. (*See* Pl. Aff.). The Affidavit states in pertinent part:

> 6. During much of the time in 2015 and 2016 Mark was unemployed or working from home.
>
> 7. To our knowledge, no inspectors had come to the property to perform inspections even though we are being charged for these property inspections at least once a month, sometimes more, by [Defendant].

(*Id*. ¶¶ 6-7).

These statements do not salvage the FDCPA claim. Plaintiffs alleged that "[t]he property inspections ordered by the Defendant's computer system are mere 'drive-by' inspections, where the inspector is supposed to drive by the property ostensibly to assess whether the house is occupied, being maintained and has not been damaged." (Am. Compl. ¶ 36). Plaintiffs criticized this style of inspection because it "provide[s] little, if any, real opportunity to determine whether the lender's interest in the property is at risk." (*Id.*). *Weir* is squarely applicable here.[5] In that case, although Judge Seibel determined she would not consider an affidavit that plaintiffs submitted in opposition to the motion to dismiss, she concluded:

> Even if I could, Plaintiffs allege in their Amended Complaint that the property inspections are "mere 'drive-by' inspections, where the inspector drives by the property ostensibly to assess whether the house is occupied, is being maintained and has not been damaged." There are no allegations in the Amended Complaint that the inspectors were tasked with coming to the door or taking pictures of the homes, so if the inspectors were merely driving by the homes for inspection, it is unlikely that Plaintiffs would know whether the inspections were completed or not, unless they were looking out the window all day and the inspectors' cars were somehow identifiable.

*Weir*, 2018 WL 3443173, at *10 n.11 (internal citations omitted). As these same failings in *Weir* exist here, the FDCPA claim is dismissed under Rule 12(b)(6) because the Mortgage terms belie the claim of a misrepresentation and Plaintiffs fail to plead facts that would allow the Court to infer plausibly that they were charged for inspections that were never performed.

III. <u>The N.Y. General Business Law Claims</u>

The fifth and sixth claims for relief allege violations of New York General Business Law § 349 and are identical except for their alleged victims (the former is characterized as one asserted for a "national" class, while the other is presented on behalf of a "New York" class). (*Compare* Am. Compl. ¶¶ 125-45, *with id.* ¶¶ 146-66). The statute cited warns that "[d]eceptive acts or

---

[5] The Court notes that Mr. Cowle, counsel for Plaintiffs in this action, was counsel to the plaintiffs in *Weir*.

11

practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful," N.Y. Gen. Bus. Law § 349(a), and provides for a private right of action, N.Y. Gen. Bus. Law § 349(h). In order to state a claim under this law, Plaintiffs "must allege that: '(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 239 F. Supp. 3d 761, 790 (S.D.N.Y. 2017) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)); *see also Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 224 (S.D.N.Y. 2010), *aff'd*, 453 F. App'x 108 (2d Cir. 2012). Defendant argues, *inter alia*, that these claims for relief must be dismissed because no deception has been identified in this contract dispute. (Def. Br. at 18-20).

For an act to be "materially misleading" under this statute, "the alleged representations must satisfy the objective test of being 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Hines v. Overstock.com, Inc.*, No. 09-CV-991, 2013 WL 4495667, at *9 (E.D.N.Y. Aug. 19, 2013) (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 604 (N.Y. 1999)). As Judge Román observed, "Courts have been reluctant to find a practice materially misleading if . . . Defendant fully disclosed the terms and conditions of the alleged deceptive transaction that caused harm . . . ." (Prior Ord. at 20 (citing *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-01058, 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012), *aff'd*, 519 F. App'x 77 (2d Cir. 2013)); *see also Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 677 (S.D.N.Y. 2012) (dismissing a § 349 claim and noting, *inter alia*, that the cardholder agreement disclosed that some merchants would not allow "split" transactions); *Park Ave. Realty, LLC v. Schindler Elevator Corp.*, 12 N.Y.S.3d 47, 48 (App. Div. 2015) (dismissing a § 349 claim and observing that the plaintiff's "possession of the actual insurance policies that contained the exclusionary language

12

upon which the denial of coverage later was based negates any finding of deceptive acts on the part of the insurers").

The Mortgage authorized the Lender to inspect the property, allowed the Lender to act in order to "protect[] and/or assess[] the value of the Property" in the event of Plaintiffs' default, and permitted the Lender to charge Plaintiffs for services connected to their default. (Mortg. at 13-14, 17). Plaintiffs seek to avoid this language by claiming that Defendant—the servicer, not the Lender—"knowingly misrepresented and intentionally omitted material information regarding the nature of the fees," (Am. Compl. ¶¶ 133, 154); that Defendant knew "that these services were unneeded and many times did not even take place," (*id*. ¶¶ 134, 155); and that Defendant duped Plaintiffs by presenting contracts that "indicate that borrowers will not be charged for unneeded or fictitious services," (*id*. ¶¶ 135, 156). Yet, these allegations highlight the fact that "Plaintiffs are not arguing that the property inspection fees were *per se* illegal under a state or federal law; rather, they posit that the charges for property inspection fees are unreasonable under their contracts." *See Weir*, 2018 WL 3443173, at *14; *see also Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 659 (E.D.N.Y. 2012).

Accordingly, as the charges were disclosed by the Mortgage and Plaintiffs are merely complaining that the charges are improper under the Mortgage, the fifth and sixth claims for relief are dismissed.

IV.   The Breach of Contract Claims

The final two claims for relief are breach of contract claims, one for each of Plaintiffs' proposed classes. (Am. Compl. ¶¶ 167-90). Within these claims, Plaintiffs allege that Defendant breached the Mortgage by charging for inspections that were unnecessary and not performed or by

13

violating certain regulations established by the New York State Department of Financial Services. (*Id.* ¶¶ 169, 171-72, 175, 180, 182-83, 186-88).

"Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Somnia, Inc. v. Change Healthcare Tech. Enabled Servs., LLC*, No. 19-CV-08983, 2021 WL 639529, at *3 (S.D.N.Y. Feb. 16, 2021) (quoting *Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 200 (S.D.N.Y. 2020)). Parties cannot "'assert a cause of action to recover damages for breach of contract against a party whom is not in privity' of contract." *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 451 (E.D.N.Y. 2013) (quoting *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 215 (S.D.N.Y. 1997)). Defendant argues, *inter alia*, that these claims must be dismissed because there is no privity of contract between it and Plaintiffs and that, in any event, Plaintiffs cannot state a breach of contract claim. (Def. Br. at 20-21).

On the issue of privity, Plaintiffs did not respond to this argument, (*see* Opp. Br. at 24-25), and therefore conceded the issue, *Cole v. Blackwell Fuller Music Publ'g, LLC*, No. 16-CV-7014, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) ("Numerous courts have held that a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument."); *30 Clinton Place Owners Inc. v. City of New Rochelle*, No. 13-CV-3793, 2014 WL 890482, at *1 n.1 (S.D.N.Y. Feb. 27, 2014) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them." (internal quotation marks omitted)). "This alone warrants dismissal of this claim for relief." *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020). Even if that were not the case, the Mortgage was a contract between Plaintiffs and Lender—and Plaintiffs' allegations concern *the Lender's* duties.

(*See* Mortg. at 2, 6; *id*. at 13 (permitting "Lender, and others authorized by Lender, may . . . inspect the Property"); *id*. at 14 (explaining that on Plaintiffs' default, "Lender's actions may include . . . protecting and/or assessing the value of the Property"); *id*. at 17 (noting that "Lender may change [Plaintiffs] fees for services performed in connection with [Plaintiffs'] default," including "property inspection and valuation fees"). Defendant was not a party to the Mortgage, and simply acting as the loan servicer is insufficient to create privity of contract between the parties. *Pereira v. Ocwen Loan Servicing, LLC*, No. 11-CV-2672, 2012 WL 1381193, at *3 (E.D.N.Y. Apr. 18, 2012) (breach of contract claim against mortgage loan servicer dismissed, as the parties lacked privity of contract).

Even if the Court were to assume, *arguendo*, the existence of privity through an agency relationship between Defendant and the Lender, *see Kapsis*, 923 F. Supp. 2d at 451-52, Plaintiffs cannot state a breach of contract claim because the second element of that claim requires Plaintiffs to allege that they performed under the Mortgage, *see Somnia*, 2021 WL 639529, at *3. Plaintiffs pled that they defaulted on the Mortgage by failing to make payments, (*e.g.*, Am. Compl. ¶¶ 12, 17-21, 23, 111, 113; Pl. Aff. ¶¶ 2-3; *see also* Opp. Br. at 2-3), thereby acknowledging that they breached a material term of the Mortgage. As such, Plaintiffs cannot plead a claim for breach of contract under New York State law. *See Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985, 2020 WL 5848619, at *14-15 (E.D.N.Y. Sept. 30, 2020) (concluding that plaintiffs who failed to make mortgage payments had failed to perform under their agreements and, as such, could not state a breach of contract claim); *Nichols v. BAC Home Loans Servicing LP*, No. 13-CV-00224, 2013 WL 5723072, at *9-10 (N.D.N.Y. Oct. 18, 2013) (dismissing breach of contract claim because, *inter alia*, plaintiff pled affirmatively that he did make mortgage payments); *Bravo v.*

*MERSCORP, Inc.*, No. 12-CV-884, 2013 WL 1652325, at *5 (E.D.N.Y. Apr. 16, 2013) (plaintiff who failed to make mortgage payments could not "sustain a claim for breach of contract").

Consequently, as Plaintiffs have not and cannot state a claim for breach of contract, the seventh and eighth claims for relief are dismissed.[6]

## CONCLUSION

Based upon the foregoing, the motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 31 and close this case.

**SO ORDERED:**

Dated: White Plains, New York
March 8, 2021

_____
PHILIP M. HALPERN
United States District Judge

---

[6] Plaintiffs' failure to even explain how it performed under the Mortgage so as to state a claim for breach of contract, (*see* Opp. Br. at 24-25), affords a separate basis for dismissing the claims for relief, which the Court adopts. *Dangelo v. Client Servs., Inc.*, No. 19-CV-1915, 2020 WL 5899880, at *4 (E.D.N.Y. June 11, 2020), *adopted by* 2020 WL 4187903 (E.D.N.Y. July 21, 2020); *30 Clinton Place Owners Inc.*, 2014 WL 890482, at *1 n.1.